[Crim. No. 2301.   Second Appellate District, Division One.—June 14, 1933.]

THE  PEOPLE,  Respondent,  v.  LIBERTY  A.  HILL, Appellant.

Cooper & Collings for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The defendant was convicted upon six counts charging grand theft, committed by him at the times and in the amounts following, that is to say: Count 2, August 15, 1930, $1,000; count 4, August 19, 1930, $2,000; count 24, March 2, 1931, $20,000; count 26, March 18, 1931, $15,000; count 30, April 2, 1931, $15,000; count 32, April 21, 1931, $15,000.   Upon the separate verdicts returned the court rendered several judgments, which for the purposes of the appeal are treated as one judgment.   The defendant

appeals from the judgment and from an order denying his motion for a new trial.

The sentence as pronounced by the court provides that the terms of imprisonment on counts 2, 24 and 26 shall run consecutively, and that the imprisonment on counts 4, 30 and 32 shall run concurrently with count 2. It is contended by appellant that the theft constituted only one offense; therefore that his conviction and sentence as for several different crimes is erroneous, and for that reason should be reversed.

At the time of the commission of the alleged offenses, and for a long time prior thereto, defendant was chief deputy of the county clerk of the county of Los Angeles, who by virtue of his office is clerk of the superior court. During the trial of an action in said court there were received in evidence two exhibits, consisting of two packages of $1,000 bills, amounting to a total sum of $75,000. These bills, while thus in custody of the court, came into the possession and control of the defendant. At that time the county clerk had certain rented safe deposit boxes in the First and Spring Street branch of the Security-First National Bank in the city of Los Angeles, one of them being box No. 78. The county clerk and this defendant were the only persons who had keys for the box, and they were the only persons authorized to have access to the box. The carefully kept records of the bank show that the visits to this box, during the period in question here, were all made by the defendant, and that no such visits were made by the clerk. The evidence further shows that prior to the time of the alleged thefts the seventy-five bills were for safekeeping placed by the defendant in said box No. 78. Ultimately, and after the date of the latest of said alleged larcenies, it was discovered that the bills had disappeared from the box. So far as the record shows they never have been found.

The evidence tends to show that during said period of time the defendant was engaged in certain speculative transactions through a brokerage house; that in those tranactions he lost large sums of money; that at various dates be paid to the broker sums of money in thousand-dollar bills. In the few instances when the broker was paid in checks on a bank where the defendant had an account, these

checks were preceded by deposits of cash made in bank by the defendant. It will be noted that the total amount of the thefts of which the defendant was convicted is the sum of $68,000. In each instance the safe deposit record, and the testimony confirming such record, shows that the defendant made visits to said safe deposit box No. 78 on the same days when moneys were paid by him to the broker or were deposited by him in his bank account. All of these facts are shown in much detail by the evidence pertinent to the several counts upon which the defendant was found guilty. That he was guilty of taking the money at the several times specified, the record shows beyond any reasonable doubt.

The only real question in the case is as to whether or not there were six separate thefts, or, as the defendant contends, only one theft. The defendant requested the court to give the following instruction to the jury: "You are instructed that where the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single theft, regardless of the time which may elapse between each act." In refusing to give this instruction the court said: "Refused—not involved in issues here. Money in this case came into possession of defendant lawfully. Therefore every taking from such funds, if there was such unlawful taking, constituted a separate offense."

We think that the court was right in its refusal to give said instruction. There is nothing in the evidence in any way tending to show that the defendant at any time when he abstracted from the safe deposit box some part of the money did so pursuant to any intention or plan to appropriate any sum other than the amount taken at that time. Apparently the temptation renewed itself from time to time as his speculative losses increased, and thus the successive offenses were committed. The contention now made in his behalf is a curious instance of an attempt to raise a presumption of guilt in aid of the defendant in order to reduce his punishment. The case is clearly one of successive embezzlements by a trusted custodian of funds. The

defendant appears to have been given a fair trial, resulting in a conviction according to law.

The judgment is affirmed, and the order denying defendant's motion for a new trial is affirmed.

Houser, J., and York, J., concurred.